# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30086

United States Court of Appeals
Fifth Circuit
**FILED**
December 29, 2015
Lyle W. Cayce
Clerk

YAROSLAV LOZOVYY,

    Plaintiff - Appellant

v.

RICHARD L. KURTZ; THOMAS R. KLEI,

    Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana

Before BENAVIDES, DENNIS, and COSTA, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

    This appeal involves the application of Louisiana Code of Civil Procedure Article 971, the state's "anti-SLAPP" statute, which provides a procedural mechanism for dismissing certain defamation claims early in litigation unless the plaintiff can establish a "probability of success." Plaintiff-Appellant Yaroslav Lozovyy sued Richard Kurtz and Thomas Klei for allegedly stating during a conference call that he destroyed and/or stole research data, and the district court granted Kurtz and Klei's special motion to strike the claim under Article 971. Lozovyy now appeals, arguing that the court erred in granting the motion despite the existence of a genuine dispute of material fact. We agree;

accordingly, we REVERSE the judgment of the district court and REMAND for further proceedings.

## I. BACKGROUND

From 2001 to 2012, Plaintiff-Appellant Yaroslav Lozovyy ("Lozovyy") was employed by Louisiana State University at the J. Bennett Johnston Sr. Center for Advanced Microstructures & Devices ("CAMD") on an annual renewable-contract basis. Lozovyy worked as a research assistant, contributing to CAMD's study and development of potential alternative energy sources. During the course of Lozovyy's employment at CAMD, he had considerable contact with Peter Dowben ("Dowben"), a physics and astronomy professor at the University of Nebraska-Lincoln. Dowben and Lozovyy frequently collaborated on academic papers, publishing over two dozen together, and they often corresponded via email to share strategies for navigating inter-office politics. Dowben also wrote to CAMD representatives on Lozovyy's behalf several times; for instance, in 2010 Dowben wrote a long email to CAMD's interim director Richard L. Kurtz ("Kurtz") about the apparent "poor quality" of recent CAMD research, arguing that it was "not a problem that [could] be laid at the feet of Yaroslav Lozovyy specifically." Another time, Dowben wrote to an LSU professor and CAMD collaborator about Lozovyy's various contributions to CAMD's work, noting that Lozovyy had been going above and beyond his job description "as a good citizen" without "any appreciable benefits."

In April of 2012, a decision was made not to renew Lozovyy's contract with CAMD, effectively terminating his employment at LSU. Lozovyy sent an email on June 28, 2012 suggesting that he had heard a "rumor . . . at LSU" that he "stole" CAMD data and "Dr. Kurtz was forced to fire" him as a result. Dowben subsequently contacted Kurtz and demanded an explanation for Lozovyy's termination, insisting that Lozovyy be allowed to return. In July of

2012, a conference call was held at Dowben's request to discuss Lozovyy's termination, among other things. The participants in the call were Dowben, Kurtz, LSU Vice Chancellor for Research and Economic Development Thomas R. Klei ("Klei"), Associate Vice Chancellor Kalliat T. Valsaraj ("Valsaraj"), CAMD Scientific Director John Scott ("Scott"), and Prem Paul and Greg Snow of the University of Nebraska-Lincoln. Lozovyy alleges that during the conference call, Kurtz and Klei falsely stated that Lozovyy had been terminated for stealing and/or destroying CAMD data.

Based on the statements allegedly made during the conference call, Lozovyy sued Kurtz and Klei (collectively, "Defendants") for defamation on July 1, 2013. After conducting discovery for over a year and twice having joint motions to extend discovery deadlines denied by a magistrate judge, Defendants filed a special motion to strike under Louisiana Code of Civil Procedure Article 971 on July 18, 2014. In support of their motion, Defendants submitted their own affidavits and affidavits from Valsaraj and Scott averring that none of the participants in the conference call had stated that Lozovyy stole or destroyed CAMD data. In response to Defendants' motion, Lozovyy submitted an affidavit from Dowben asserting in relevant part that "Kurtz and Klei specifically stated that Dr. Lozovyy had stolen and destroyed data."[1] Defendants countered with numerous affidavits and exhibits attacking Dowben's credibility, including the aforementioned emails and statements regarding actions taken by Dowben on Lozovyy's behalf.

---

[1] Kurtz and Klei also argued forcefully in the district court that, apart from the issue of whether defamatory statements were made, Lozovyy had failed to produce any evidence on the necessary element of damages. In response, Lozovyy submitted affidavits from colleagues regarding harm to his reputation as relevant to the issue of damages. The district court ultimately resolved Kurtz and Klei's motion on the question of whether the alleged statements were made, and neither party has raised or argued the damages issue on appeal.

No. 15-30086

On July 24, 2014, the district court issued a notice to the parties that the special motion to strike would be converted to a motion for summary judgment, and Defendants would have 14 days to supplement their motion as appropriate for one for summary judgment. Defendants supplemented their motion on August 7, 2014, maintaining in the alternative that a special motion to strike was available to them under Louisiana law. On December 17, 2014, the district court issued another notice to counsel indicating that, upon reconsideration, Defendants' motion would be treated as a special motion to strike under Louisiana Code of Civil Procedure Article 971. The court asked for additional briefing and held a hearing on January 15, 2015, ultimately granting Defendants' motion on January 26, 2015.

In the court's written order, it first noted that Article 971 could properly be applied in federal court, although "neither party ha[d] raised the issue." The court then based its decision to grant the motion on its view that "the burden imposed by Article 971 is greater than . . . the burden of the non-movant on a motion for summary judgment," and it indicated in a footnote that "if the ordinary summary judgment standard applied, . . . Peter Dowben's declaration would be enough, by itself, to defeat [the] motion . . . and create an issue of fact for trial." On the affidavits presented, the court concluded that Defendants' evidence "cast[] doubt on the credibility of . . . Mr. Dowben," and thus "[i]f any weighing of evidence is required by Article 971, and the Fifth Circuit appears to require this, then Plaintiff loses." The district court accordingly entered judgment dismissing Lozovyy's claim with prejudice on February 9, 2015. Lozovyy now appeals, arguing that (1) the motion and hearing were untimely, and (2) the district court misapplied Article 971's dismissal standard.

## II. APPLICABLE LAW

Louisiana Code of Civil Procedure Article 971 provides that

[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

LA. CODE CIV. PROC. art. 971(A)(1). Article 971 also sets forth specific timing provisions for special motions to strike: such motions "may be filed within ninety days of service of the petition, or in the court's discretion, at any later time upon terms the court deems proper," and properly filed motions "shall be noticed for hearing not more than thirty days after service unless the docket conditions of the court require a later hearing." *Id.* arts. 971(C)(1) & (3). In the act creating Article 971, the Louisiana legislature indicated that in light of the "disturbing increase in lawsuits brought primarily to chill the valid exercise of . . . constitutional rights," the provisions of Article 971 "shall be construed broadly." *Thomas v. City of Monroe*, 833 So. 2d 1282, 1286 (La. App. 2d Cir. 2002) (quoting 1999 La. Acts 734).

This Court reviews a district court's determinations of state law *de novo*. *Am. Reliable Ins. Co. v. Navratil*, 445 F.3d 402, 404 (5th Cir. 2006). In reviewing determinations of state law, we look to the final decisions of the state's highest court, making an "'*Erie* guess'" as to how the highest court would resolve an issue if it has not been fully addressed. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (quoting *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*, 542 F.3d 475, 483 (5th Cir. 2008)). Intermediate state appellate decisions are generally given deference in making an *Erie* guess unless "'other persuasive data'" indicates "'that the highest court of the state would decide otherwise.'" *Id.* "To the extent that a prior panel of this Circuit has ruled on [a state law] issue and has not been superceded [sic] by either [state] case law or a change in statutory authority," we are also

"bound by the prior decisions of this Circuit as to the meaning of [state] law." *Welborn v. State Farm Mut. Auto. Ins. Co.*, 480 F.3d 685, 687 (5th Cir. 2007).

### III. DISCUSSION

Lozovyy challenges the district court's grant of Defendants' special motion to strike on two primary bases: first, Lozovyy argues that the motion and hearing did not comply with the timing provisions of Article 971, and second, Lozovyy insists that the court misapplied Article 971's "probability of success" standard when it apparently weighed conflicting affidavits and granted the motion despite the existence of a genuine dispute of material fact.[2] We address Lozovyy's timeliness arguments first, and we then discuss the meaning of Article 971's dismissal provision.[3]

*A. Timeliness of the Special Motion to Strike and Hearing*

As noted above, Article 971 provides that special motions to strike under its auspices "may be filed within ninety days of service of the petition, or in the court's discretion, at any later time upon terms the court deems proper." LA. CODE CIV. PROC. art. 971(C)(1). Additionally, properly filed motions "shall be

---

[2] Lozovyy puts forth two additional arguments that we need not address. First, in his reply brief, Lozovyy argues that Defendants never met their initial burden under Article 971 by making a *prima facie* showing that the act sued upon was taken "in furtherance of the . . . right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue." *Starr v. Boudreaux,* 978 So. 2d 384, 388–89 (La. App. 1st Cir. 2007). However, because this argument was not raised in Lozovyy's initial brief, it is waived. *See Lockett v. EPA*, 319 F.3d 678, 684 n.16 (5th Cir. 2003) ("To the extent that appellants attempt to raise the issue . . . in their reply brief, we view the issue waived."); *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 179 (5th Cir. 2000) ("We do *not* consider any of [the arguments], because they were *not* raised in the parties' opening briefs."). Second, Lozovyy argues that the district court's application of Article 971 violated his Seventh Amendment right to a jury trial. Because we reverse on statutory grounds, we do not reach the constitutional issue.

[3] While we ultimately reverse on the district court's application of Article 971's dismissal provision, it seems that the question of whether dismissal is appropriate on an Article 971 motion is only relevant if that motion was timely filed under the statute's timing provisions. Significantly, we note that neither party has argued that we should not reach the timing issue, and we accordingly address the timeliness of Defendants' motion as a threshold matter.

noticed for hearing not more than thirty days after service unless the docket conditions of the court require a later hearing." *Id.* art. 971(C)(3). It is not disputed that Defendants' special motion to strike in the present case was filed beyond the ninety day window provided in Article 971, and the motion was noticed for hearing more than thirty days after service. Thus, Lozovyy argues that both the motion and the hearing on the motion were untimely.[4] While he acknowledges that Article 971(C)(1) gives the trial court discretion to hear special motions filed after ninety days, he argues that Defendants should have sought leave of court to file their motion beyond the deadline, which they failed to do. Furthermore, Lozovyy contends that the statutory exception to the thirty day hearing deadline in cases where "docket conditions of the court require a later hearing" was neither discussed nor relied upon by the district court, making the late docketing impermissible. We reject both arguments.

With respect to filing, Lozovyy cites no state-law authority for the proposition that Defendants were required to seek leave of court in order to file their motion beyond ninety days. Rather, Lozovyy simply cites to cases where trial courts refused to consider Article 971 motions brought after the ninety day deadline. But these citations miss the point, which is that the decision whether to allow late motions is *discretionary* under 971(C)(1). Cases do exist where litigants have waited too long and trial courts have declined to exercise their 971(C)(1) discretion; but cases also exist where courts have allowed such motions to proceed. *See, e.g.*, *BCCL Enter., Inc. v. Rizzo*, No. 2013 CA 1624, 2014 WL 4102467, at *2 (La. Ct. App. 1st Cir. Aug. 20, 2014). Ultimately, the

---

[4] In his briefing, Lozovyy also argues that Federal Rule of Civil Procedure 6(b) governs deadline extensions in federal court and requires several formalities that were not complied with here. However, Lozovyy apparently abandoned this contention at oral argument, conceding that Rule 6(b) is inapposite, and he regardless waived the argument by failing to raise it before the district court. *See NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 752 (5th Cir. 2014).

broad, discretionary language of the statute "plainly allows a district judge to determine when a motion is timely filed." *Hampton-Stein v. Aviation Fin. Grp., LLC*, 472 F. App'x 455, 457 (9th Cir. 2012) (upholding a district court's decision to allow a late-filed motion under California's almost-identical anti-SLAPP statute).

With respect to the timeliness of the hearing on the motion, Louisiana appellate court precedent conclusively forecloses Lozovyy's argument. In *Aymond v. Dupree*, a special motion to strike was filed in April of 2005, and the trial court scheduled the hearing on the motion, as well as two other motions, for July 12, 2005. 928 So. 2d 721, 731 (La. Ct. App. 3d Cir. 2006). The Louisiana Third Circuit Court of Appeals held that this scheduling was permissible despite the thirty day language of Article 971, because the judge had been appointed *ad hoc* to hear the case and it was therefore "in the interest of judicial economy" for all motions to be heard "on the same date." *Id.* The court also rejected the argument that the trial court should have listed specific "docket conditions" warranting the late hearing; the appellate court reasoned that had the legislature intended to require "oral or written reasons from the court explaining the court's deviation from the thirty-day scheduling provision, the legislature would have included a mandate for same. There is no such mandate." Rather, "the article itself allows deviation from the" thirty day provision, and this provision "is broadly stated." *Id.* As such, the court concluded that appellant's argument was "without merit." *Id.*

While Lozovyy dismisses the discussion in *Aymond* as "dicta" because the issue was raised for the first time on appeal and thus was not properly before the court, Lozovyy presents no argument or authority to suggest that *Aymond*'s reasoning is flawed or should otherwise be discounted. Additionally, the district court's delay in this case appears to have stemmed from its uncertainty about whether an Article 971 motion could be properly considered

in federal court; this prompted the court to initially convert the motion into a motion for summary judgment and later, after a new judge had been assigned to the case, convert it back to a special motion to strike. We think that under *Aymond*, the hesitation and judge-shuffling in the district court were enough to have justified the late hearing on the motion. Accordingly, we conclude that neither the motion nor the hearing were barred by the timing provisions of Article 971.

*B. Application of Article 971's Dismissal Provision*

Lozovyy's primary contention on appeal is that the district court applied Article 971's "probability of success" dismissal standard incorrectly. Ruling on a special motion to strike under Article 971 involves a "burden-shifting analysis for weeding out frivolous claims." *Henry v. Lake Charles Am. Press*, 566 F.3d 164, 170 (5th Cir. 2009). The defendant-movant must first make a prima facie showing that Article 971 covers the speech or activity at issue—i.e. that the act sued upon was taken "in furtherance of the . . . right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue." *Starr,* 978 So. 2d at 388–89. Once a prima facie showing is made, the burden shifts to the plaintiff to demonstrate a "probability of success" on his claim. *Id.* at 389. If the plaintiff demonstrates a "probability of success," "the trial court denies the [special] motion and the suit proceeds as it normally would"; if the plaintiff fails to demonstrate a "probability of success," the trial court dismisses the claim. *Henry*, 566 F.3d at 170.

Lozovyy argues that the district court in this case, in ruling that Lozovyy had failed to demonstrate a "probability of success" on his defamation claim, applied Article 971 in a manner that directly conflicts with Federal Rule of Civil Procedure 56. As Lozovyy correctly identifies, other circuits have refused to apply anti-SLAPP dismissal provisions similar to Article 971 in federal court under the *Erie* doctrine, reasoning that they create distinct mechanisms for

9

pretrial dismissal of claims that are incompatible with the Rule 56 standard for summary judgment. *See, e.g.*, *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333–34 (D.C. Cir. 2015). In *Henry v. Lake Charles American Press*, however, this court appeared to recognize that application of Article 971 does not create an *Erie* problem when we held that "Louisiana law, including the nominally-procedural Article 971, governs this diversity case." 566 F.3d at 168–69. Nevertheless, Lozovyy asserts that *Henry* merely assumed the issue without deciding it and failed to address the potential conflict with Rule 56; in support of this assertion, Lozovyy points to later, unpublished cases where this court has expressly declined to "decide whether Louisiana's anti-SLAPP law is appropriately asserted in a federal diversity case." *Mitchell v. Hood*, No. 14-30537, 2015 WL 3505481, at *2 n.1 (5th Cir. June 4, 2015) (per curiam). Lozovyy accordingly argues that Article 971's dismissal provision cannot apply in federal court unless the "probability of success" standard is read as functionally equivalent to the federal standard for summary judgment under Rule 56 (thereby avoiding a "direct collision" between the two). Thus, Lozovyy claims that the district court erred in granting Defendants' motion, because it explicitly premised its ruling on the view that Article 971 imposes a higher burden on the non-movant than at summary judgment. In the district court, however, Lozovyy never argued that Article 971 must comport with Rule 56 as a matter of the *Erie* doctrine, nor did the district court address the issue in its order. Rather, the court merely cited *Henry* in support of its authority to rule on the motion after noting that "neither party [had] raised the issue." We accordingly decline to revisit *Henry*'s pronouncement on this point or address its implications with respect to Article 971's applicability in federal court under the *Erie* doctrine, because Lozovyy failed to "raise the issue to such a degree that the trial court [could] rule on it." *Mauze & Bagby*, 745 F.3d at 752–53. We

instead "proceed assuming" the statute does not conflict with the Federal Rules. *Id.*

Assuming Article 971 properly applies in federal court, however, we are faced with the question of whether the district court applied the "probability of success" standard correctly as a matter of Louisiana law. Lozovyy forcefully and repeatedly argued to the court below that Louisiana courts treat Article 971 motions in the same manner as motions for summary judgment, foregoing credibility determinations and evidence-weighing and asking simply whether a genuine dispute of material fact exists. Nevertheless, the district court ultimately determined that Article 971 permits courts to weigh evidence and make credibility assessments in order to essentially resolve disputed issues of material fact before trial. Because we believe that Louisiana law would not sanction such a result, we must reverse the district court's judgment.

In his briefing, Lozovyy relies heavily on a federal district court opinion from the Eastern District of Louisiana in which the court undertook "a thorough review of the Louisiana cases interpreting [A]rticle 971" and concluded that in almost every instance "when Louisiana courts have found disputed issues of material fact, they have found that a special motion to strike should not be granted." *Louisiana Crisis Assistance Ctr. v. Marzano-Lesnevich*, 827 F. Supp. 2d 668, 679 (E.D. La. 2011), *vacated on other grounds*, 878 F. Supp. 2d 662 (E.D. La. 2012). Our own review of Louisiana caselaw leads us to a similar conclusion.

As a starting point, the Louisiana First, Second, and Third Circuit Courts of Appeal have all referred to Article 971 motions as "akin to [] motion[s] for summary judgment." *Hakim v. O'Donnell*, 144 So. 3d 1179, 1190 n.5 (La. Ct. App. 2d Cir. 2014); *Hebert v. La. Licensed Prof'l Vocational Rehab. Counselors*, 4 So. 3d 1002, 1010 (La. App. 3d Cir. 2009); *Lamz v. Wells*, 938 So. 2d 792, 796 (La. Ct. App. 1st Cir. 2006). Most tellingly, Louisiana's Second

Circuit has treated the Article 971 "probability of success" dismissal standard as effectively interchangeable with the standard for summary judgment under Louisiana law and has rejected the notion that either standard allows judges to weigh credibility. *See Bradford v. Judson*, 12 So. 3d 974, 983 (La. Ct. App. 2d Cir. 2009). In *Bradford*, the plaintiff sued the defendant over an email stating that the plaintiff had taken certain proceeds illegally. *Id.* at 981. The trial court granted defendant's motions for summary judgment and special motions to strike, and the appellate court reversed after conducting a thorough analysis of Louisiana's summary judgment standard and defamation law. *See id.* at 977, 982. The court explained that the determination of whether to grant summary judgment requires an assessment of whether there is a "genuine" or "triable" issue of "material fact," with "material fact" denoting a fact "the existence or nonexistence of which may be essential to plaintiff's cause of action under the applicable theory of recovery." *Id.* at 981 (citing *Kennedy v. Sheriff of East Baton Rouge*, 935 So. 2d 669, 686 (La. 2006)). On the facts of the case, the court recognized that a dispute existed as to whether the email constituted abuse of a conditional privilege under state defamation law, and "[b]oth sides [were] telling the 'truth' as they kn[e]w it." *Id.* at 982–83. As such, the court concluded that the plaintiff "should be permitted to present his version and [defendant] hers," because "[w]eighing credibility has no place in a motion for summary judgment." *Id.* at 983. The court thus reversed the grants of both summary judgment *and* the special motions to strike, conducting *no separate analysis* on the question of Article 971's "probability of success" standard. *Id.*

This approach to Article 971 is consistent with the approach that California courts have taken in applying their "virtually identical" anti-SLAPP statute. *Baxter v. Scott*, 847 So. 2d 225, 231–32 (La. Ct. App. 2d Cir. 2003), *vacated on other grounds*, 860 So. 2d 535 (La. 2003). Courts of appeal in California have repeatedly held that the state's anti-SLAPP dismissal

provision, which requires a non-movant to demonstrate a "probability of prevailing," entails only a determination "that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment." *D'Arrigo Bros. of Cali. v. United Farmworkers*, 169 Cal. Rptr. 3d 171, 178 (Cal. Ct. App. 6th Dist. 2014). Notably, a court is not permitted to "weigh credibility [or] compare the weight of the evidence" in making this determination. *Id.* Moreover, California courts have consistently concluded that motions to dismiss under the state's anti-SLAPP provision should not be granted when material fact issues exist. *See, e.g.*, *GetFugu, Inc. v. Patton Boggs LLP*, 162 Cal. Rptr. 3d 831, 841 (Cal. Ct. App. 2d Dist. 2013) (holding that "opposing declarations, by disputing" the falsity of the relevant statements, precluded dismissal). Because Louisiana courts have recognized the similarity between Article 971 and California's anti-SLAPP statute and have looked to California precedent in interpreting Louisiana's provisions, this caselaw is persuasive in predicting how the Louisiana Supreme Court would construe Article 971's "probability of success" standard.[5] *See, e.g.*, *Baxter*, 847 So. 2d at 231–32. In short, a review of Louisiana caselaw—coupled with the recognition that Louisiana courts have relied on California's interpretation of its nearly identical anti-SLAPP provision in the past—leads us to believe that the Louisiana Supreme Court would decline to read Article 971's "probability of success" standard as permitting courts to assess credibility or weigh evidence in order to resolve disputed issues of material fact before trial.[6]

---

[5] While we recognize that our task is to determine Louisiana law, and we are wary of cherry-picking out-of-state precedent in service of this task, we think that California precedent is useful in this instance precisely because Louisiana courts have acknowledged the similarity between the California and Louisiana anti-SLAPP statutes in opinions interpreting Article 971. *See Yount v. Handshoe*, 171 So. 3d 381, 387 n.4 (La. Ct. App. 5th Cir. 2015).

[6] We do recognize that there are a few cases in which Louisiana appellate courts have appeared to weigh conflicting evidence in resolving Article 971 motions (without stating that

This court's discussion of Article 971 in *Henry* is also not to the contrary. While *Henry* is not a paragon of clarity, and it admittedly does refer to Article 971 as establishing a "difficult burden," the opinion also notes that a special motion to strike "resolves a question separate from the merits in that it merely finds that such merits may exist, without evaluating whether the plaintiff's claim will succeed." 566 F.3d at 175, 182 (quoting *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003)). Ultimately, *Henry* frames the "probability of success" standard as "akin to a court determining only that a plaintiff has presented a threshold showing that allows her claim to proceed" by making a "prima facie showing of facts sufficient to sustain a favorable judgment." *Id.* at 176, 181. At no point does *Henry* intimate that Article 971 requires or permits courts to make credibility determinations and dismiss claims despite the presence of genuine disputes of material fact.

Nevertheless, Defendants argue that Article 971's "probability of success" standard was meant to codify a special, more stringent summary judgment burden that formerly applied to non-movants in Louisiana defamation cases, and they cite the Louisiana Supreme Court's opinion in *Sassone v. Elder* for this proposition. 626 So. 2d 345, 351 (La. 1993). *Sassone*,

---

they are doing so). *See, e.g.*, *Brandner v. Molonguet*, No. 2014 CA 0712, 2014 WL 7332206, at *12–*13 (La. Ct. App. 2d Cir. Dec. 23, 2014); *Lozovyy v. Kurtz*, No. 3:13-CV-00424, 2015 WL 331804, at *9 (M.D. La. Jan. 26, 2015) (reading *Brandner* as involving consideration of "conflicting affidavits"). However, we think that these cases are not necessarily inconsistent with our holding today. In *Brandner*, for instance, the court's conclusion rested largely on the fact that Plaintiff's affidavit conflicted with *his own* handwritten records that he attached to the affidavit. 2014 WL 7332206, at *12. Furthermore, to the extent that *Brandner* or a select few other cases can be read as permitting courts to resolve material factual disputes by weighing conflicting evidence, we are nevertheless persuaded that the weight of Louisiana authority supports our conclusion (and would lead the Louisiana Supreme Court to reach a consistent result). *See Rogers v. Ash Grove Cement Co.*, 799 So. 2d 841, 849 (La. Ct. App. 2d Cir. 2001) (Brown, J., dissenting) (lamenting the majority's failure to address Article 971 and noting that because "Article 971's intent and purpose [are] the same as a summary judgment motion," denial of an Article 971 motion "obviously" means that "there [are] material issues of fact").

however, did not hold that defamation claims should be subject to a summary judgment standard that permits courts to weigh evidence and resolve disputed fact issues. Rather, the court in *Sassone* simply determined that defamation claims would not be subject to the unique standard for summary judgment in non-defamation cases that applied under Louisiana law at the time.[7] *See id.* at 351–52. Put another way, *Sassone* was, if anything, merely a recognition that Louisiana's special summary judgment standard, which reflected a "strong preference for full trial on the merits," did not apply to defamation claims "because of the constitutional considerations in such cases." *Id.* at 352.

This reading of *Sassone* is supported by the fact that Louisiana's distinct summary judgment standard for non-defamation claims was "legislatively overruled" by Louisiana Code of Civil Procedure Article 966. *JCM Const. Co., Inc. v. Orleans Parish Sch. Bd.*, 860 So.2d 610, 634 (La. Ct. App. 4th Cir. 2003). As the Court of Appeal for the Fourth Circuit later recognized, the statutory amendment brought "Louisiana's standard for summary judgment closely in line with the federal standard under Fed. Rule Civ. Proc. 56(c)," *id.*, and the Louisiana Supreme Court subsequently acknowledged that the new statute had eliminated the need to recognize a different standard for defamation and non-defamation claims. *Kennedy v. Sheriff of East Baton Rouge*, 935 So. 2d 669, 686 n.17 (La. 2006). In other words, the court's opinion in *Kennedy* reflected that because the statute had brought Louisiana summary judgment "closely in line" with the federal standard, the rejection of Louisiana's special, cautious treatment of summary judgment was no longer necessary in defamation cases. All of this is to say that Article 971, assuming it was meant to codify the "special" defamation standard for summary judgment that existed in 1993,

---

[7] Prior to 1996, summary judgment was generally disfavored in Louisiana, and thus a "heavy burden" rested on the movant to show that a motion for summary judgment should be granted. *Id.* at 352.

codified only a standard that Louisiana courts have since suggested is akin to the federal standard.[8] And no court, to our knowledge, has concluded that on a motion for summary judgment in a defamation case, the trial court is permitted to weigh evidence and assess credibility in order to resolve material factual disputes.

In sum, we believe the Louisiana Supreme Court would recognize that Article 971's "probability of success" standard does not permit courts to weigh evidence, assess credibility, or resolve disputed issues of material fact. Thus, when the district court in this case granted dismissal based on its assessment of the credibility of the parties' affidavits and despite its acknowledgment that a triable fact issue existed, the court applied Article 971 in a manner that is contrary to Louisiana law.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for further proceedings.

---

[8] *Compare Sassone*, 626 So. 2d at 356 (Dennis, J., concurring) (recognizing that the burden on the non-movant defamation plaintiff was to "show[] that a judge or jury reasonably could find by clear and convincing evidence" that he had proved his case), *with Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (setting forth essentially the same standard).